## THOMPSON *vs.* SCHLATER.

APPEAL FROM THE COURT OF THE SECOND JUDICIAL DISTRICT, FOR THE PARISH OF IBERVILLE, THE JUDGE OF THE DISTRICT PRESIDING.

The act of congress passed the 15th of June, 1832, giving to front proprietors on water courses the preference of entering their back lands, provides that notices of such pre-emption claims shall be entered, and the money paid thereon, at least three weeks before the public sale of the lands in the township, by the proclamation of the President; and all lands not so entered shall be liable to be sold, or afterwards entered as other public lands. The act of the 24th of February, 1835, revives this act for one year.

So, where A enters back lands on the 18th of December, 1833, after the township had been offered at public sale by the President; and B, who owns the front tract, enters the same land as a back concession in 1836, under the pre-emption law of 1835: *Held*, that the entry and purchase of A, divested the government of its title, and B lost his right of pre-emption, which ceased to exist after the land had been offered at public sale.

The right acquired by a purchaser of public lands, according to the provisions of the pre-emption act of 1832, are vested, and cannot be taken from him by a subsequent act in 1835, reviving the former law for one year.

The plaintiff alleges he is owner of a front tract of land on the Mississippi, having seventeen arpents front with the usual depth; and that he entered his back lands in rear of his front tract, on the 14th of June, 1836, under the provisions of the pre-emption act of 1832, and revived by the act of 1835. That the defendant claims title to one hundred

and seventy-two superficial acres of his back lands, and persists in taking and holding possession thereof, and of cutting down timber and committing waste on the same, to his damage six thousand dollars. He prays judgment for his damages, and that he be decreed to be the owner of said land.

The defendant pleaded several exceptions and various matters in defence, not necessary to notice; finally, he called in his warrantor, who likewise cited his, until they came to one George Sharp, who purchased the disputed premises, together with other lands, by regular entry and purchase from the government of the United States, the 18th of December, 1833.

The evidence also showed this land, although it made part of back lands and might have been entered and purchased as a back concession under the pre-emption law of 1832, was not in fact so entered; but that it had been regularly offered at public sale, with the other public lands situated in the same township, by the President of the United States, and remained unsold, until purchased by George Sharp, under whom the defendant and his warrantors claim.

On the evidence and laws of congress produced, the district judge decided in favor of the defendant. The plaintiff appealed.

*Labauve* and *Edwards*, for the plaintiff and appellant.

*A. N. Ogden* and *Robertson*, for the defendant and warrantors.

*Rost, J.*, delivered the opinion of the court.

This is an action for slander of title. The plaintiff alleges that he is the owner and proprietor of a tract of land fronting on the Mississippi River, having seventeen arpents front, with the depth thereto belonging, and also of one other tract of land, adjoining to and back of the former, which he acquired by purchase from the government of the United

States, on the fourteenth day of June, 1836, the said plaintiff having at that time a pre-emption right to said back land by the laws of congress then in force. The petitioner further alleges, that notwithstanding the premises, the defendant has repeatedly slandered, and still continues to slander and defame his title, and bring it into disrepute, by pretending that said tract of land belongs to him, the said defendant, and not to the plaintiff; that the said defendant has entered upon the land, and has committed and still continues to commit waste, by cutting down, splitting, and carrying away timber. He prays that the defendant be enjoined from committing waste ; that the timber now cut down and split on the land in controversy be sequestered ; that he may be forever quieted in his title, against the claims and pretensions of the defendant, and that the said defendant be adjudged to pay him damages.

EASTERN DIST.

*March*, 1839.

THOMPSON
*vs.*
SCHLATER.

The defendant and his warrantors deny the plaintiff's allegations, and set up title to the land claimed, under a purchase from the United States, made on the 18th of December, 1833 ; they also deny the *locus in quo* ; pray for a survey ; that the injunction and the sequestration be dissolved, and that the plaintiff be adjudged to pay them damages.

In the trial below, the parties abandoned their claim for damages ; judgment was given on the titles, in favor of the defendant, and after an unsuccessful attempt to obtain a new trial, the plaintiff appealed.

The evidence shows, that one George Sharp, under whom the defendant claims, purchased from the United States, at the time alleged, two tracts of vacant land, of which the land in controversy forms a part, and the chain of conveyance is admitted to be regular and complete; it is also admitted, that the title of the plaintiff to the front tract has been confirmed by the board of commissioners, and it is proved that he purchased the land which he claims, as stated in the petition. From the foregoing statement, it appears that the two parties to this suit have acquired, from the government of the United States, two adverse titles to the

same tract of land, in apparent conformity with the disposi-
tions of two acts of congress, and we are called upon to say
which of said titles is to prevail.   We know no other rule of
right, where the sovereign is concerned, than that which
would, under similar circumstances, govern the transactions
of individuals ; and we are of opinion that the sale to Sharp,
being the first in date, divested, irrevocably, the United States
of their right of soil, unless the plaintiff has shown that he
had a right of pre-emption to the land claimed, at the time
of the defendant's purchase, and that it continued to exist,
until he acquired his title.

The act of congress to authorize the inhabitants of the
state of Louisiana to enter their back lands, approved on the
5th June, 1832, provides, " that any person owning land in
Louisiana, bordering on a water course, and not exceeding
in depth forty arpents, French measure, shall be entitled to
a preference in becoming the purchaser of any vacant tract
of land adjacent to and back of his own tract, not exceeding
forty arpents in depth, nor in quantity of land that which is
contained in his own tract ;" but that act also expressly pro-
vides, that " all notices of such claims shall be entered, and the
money paid thereon, at least three weeks before such period as
may be designated by the president of the United States for the
public sale of the lands in the township in which such claims may
be situated ; and all claims not so entered shall be liable to be
sold as other public lands."   By an act approved on the 24th
February, 1835, the time given by the former act was
extended one year without any change being made in its
provisions, and under this last act, the plaintiff entered and
purchased the land in controversy ; but previous to the 18th
December, 1833, the period designated by the president of
the United States, for the public sale of the lands in the
township in which that claim is situated, had passed, the
land had been offered at public auction, and not being then
sold, George Sharp entered it on that day.

We are of opinion, that the act of Congress under which
the plaintiff claims was not violated thereby ; the right of
pre-emption was given to him, provided his claim was filed

three weeks before the public sale of the land in that town-
ship, and not otherwise. If that land was offered for sale
after the passage of the act of 1832, he lost the preference
to which he was entitled, by his own negligence : if it was
offered before the passage of that act, he could no longer fulfil
the condition upon which only the preference was given, and
although he might, perhaps, enter the land in the form and
shape of a double concession, he could not do so to the preju-
dice of previous entries.

If the act of 1832 had provided, that when the back lands
had not been offered for sale, notice of the claim should be
entered and payment made three weeks before the period
designated by the president for that purpose, it would be a
fair inference that the act was intended to apply to all back
lands. But the wording of that act is clear, unambiguous,
and without reservation. It says, " *all notices of such claims*
*shall be entered*," which cannot mean that only a part of them
shall be entered.

Congress was aware of the situation of the public lands in
Louisiana. They knew that part of those lands had been
offered at public sale, and others not ; if they imposed an
impossible condition to some of the front proprietors, it was
because they did not intend that the privilege granted should
extend to them.

The intention of congress is clearly shown by their former
legislation on the same subject ; the first act authorizing front
proprietors in Louisiana to enter their back lands, was passed
in 1811, before Louisiana became a state, and before any of
the public lands had been sold or surveyed ; it was a valua-
ble privilege to landholders, at a time when there was no
other mode of acquiring public lands ; but the reason of the
law ceased after they had been offered for sale, because the
front proprietors could then either buy them at the sale or
enter them afterwards, and accordingly we find that the act
of 1832 limits the right of pre-emption to the lands not *yet*
*offered* for sale. The act of 1811, otherwise similar to that of
1832, did *not* contain that limitation. It gave to all front
proprietors in Louisiana, and the plaintiff among the rest, a

So, where A enters back lands on the 18th December, 1833, after the township had been offered at public sale by the President, and B who owns the front tract, enters the same as a back conces- sion in 1836, un- der the pre- emption law of 1835 : *Held*, that the entry and purchase of A divested the go- vernment of its title, and B lost his right of pre- emption, which ceased to exist after the land had been offered at public sale.

EASTERN DIST.
*March*, 1839.

THOMPSON
*vs.*
SCHLATER.

privilege to their back lands, provided the entry was made and the money paid within three years from the date of its passage; in 1820 it was revived for two years, without any change. After the plaintiff failed to avail himself of those opportunities, after he neglected to purchase his back lands when they were offered at public sale, and suffered the defendant to enter them, he can have no just ground of complaint, for being deprived of a privilege, burthensome to others, and which he had enjoyed for five years at two different times, without attempting to exercise it. Congress cannot, without injustice to the public, take better care of individuals than they chose to take care of themselves.

If the plaintiff had been entitled to a pre-emption under the act of 1832, he would have lost his right, by suffering the time allowed by that act to expire, without availing himself of its provisions. The sale to George Sharp took place while that act was in force, and it has been contended at the bar that it was a nullity, because the land which it purported to convey was at that time set apart and reserved for front proprietors. To test the correctness of this position, let us examine what would be now the situation of the defendant, if the plaintiff had never filed his claim; he has paid for the land; he holds it by a sale from the United States, and by that sale they pledge their faith that it shall not be sold to another. He is in possession, and could never be disturbed; we hold this to be a title. Had the act of 1832 been suffered to expire by its own limitation, the case supposed would have occurred. The revival of that act, for another year, ought not, in our opinion, to affect the defendant; his vested rights could not be taken from him by subsequent legislation. He acquired from the government a title which was to become indefeasible on the 15th of June, 1835, provided the plaintiff did not file his claim till after that date; and the plaintiff filed his claim on the 14th June, 1836.

We are of opinion that the sale to George Sharp divested the United States of their right of soil, and that nothing passed under the sale subsequently made to the plaintiff.

The rights acquired by a purchaser of public lands, according to the provisions of the pre-emption act of 1832, *are vested*, and cannot be taken from him by a subsequent act in 1835, reviving the former law for one year.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.