BOSWORTH<br>*v.*<br>BEILLER.

---

## MORANCY *v.* FORD.

The United States never so entirely divest themselves of title to public lands, until a patent is issued, as to be precluded from cancelling the sale and setting aside an entry illegally made.

The Register and Receiver of the Land Office are the proper tribunal for determining, whether land claimed by a party is embraced in the prohibition of the proviso inserted in the act of Congress of 13 June, 1832, authorizing the inhabitants of Louisiana to enter back lands, and, for that reason, not subject to be entered as a back concession. Their decision is subject to revisal by the Commissioner of the General Land Office, but 'not by the state tribunals.

APPEAL from the District Court of Madison, *Curry*, J.

The plaintiff alleges that he is the owner, in possession, of lots of land 1, 2, 3, 4, 5 and 6, of section 26, township 17, range 13 east, in the district of pub-

lic lands north of Red River, of the value of $10,000; that he acquired title by purchase from the United States at the Land Office at Ouachita, on the first of December, 1832, and first of February, 1833. That the defendant has and continues publicly, by speech and in writing, to slander his title to said land, and to assert title in himself as pre-emptor, to his damage, &c.

The defendant alleges that he has a good title to the land claimed by the plaintiff, in his own right, and as the representative of the widow and minor heirs of William Clair, deceased, by virtue of an act of Congress passed on the 15th of June, 1832, entitled "An act to authorise the inhabitants of the State of Louisiana to enter the back lands," and of an act supplementary thereto, passed on the 24th of February, 1835. That, at the time of the passage of said acts and prior thereto, the defendant was the owner of lot 7, and the said widow and heirs of lots 4, 5 and 6, in township 17, range 13 east, in the land district north of Red River, fronting on the Mississippi River, under titles derived from the United States. That prior to the passage of said acts, defendant married Ethalie Clair, the widow of the deceased, and natural tutrix of his and her minor children, George G. Clair and William Armstrong Clair, and was duly constituted under tutor to said minors. That prior to the expiration of said acts, (in the spring, or early in the summer of 1835,) and in compliance with, and in conformity to, the provisions thereof, the defendant in his own right as owner of lot 7, and as the representative of said widow and minors, owners of lots 4, 5 and 6, in said township and range, fronting on Mississippi River, "did give the notice required by said act of Congress, and did also tender the money for the purpose of entering the land described in the plaintiff's petition, at the Land Office at Oouchita, within which district said lands were situated." That by the act of Congress aforesaid, he was entitled to a preference in becoming the purchaser of said land, it being his back concession in his own right, and as the representative of the said widow and minor heirs, owners as aforesaid of lots 4, 5, 6 and 7, in said township and range, fronting on the Mississippi River. That this right of preference vested by said act of Congress, and could not be taken from them. That the entries of said land "as set forth in the plaintiff's petition," were made in fraud of their rights, conveyed no title to the plaintiff, and are null and void. That the unlawful entry and detention of said land, has occasioned to the defendant $1,000 damage, which he claims in reconvention.

The facts established by the evidence in this case are stated in the opinion of the court, *infra*. There was a judgment in the court below in favor of the plaintiff for the land in controversy, from which the defendant appealed.

*Stacy* and *Sparrow*, for the plaintiff. The question whether the land fell within the proviso of the act of 1832, was *solely* within the jurisdiction of the officers of the land department; the courts of the State had no jurisdiction, and could not inquire into the matter. The power of declaring *what are watercourses, &c.*, is *specially vested by law* in the Surveyor General; and courts of justice have no jurisdiction to annul his acts, nor any superintending control over them. They have no authority to control the surveys of the General Government, or to determine what are or are not water-courses falling within the meaning of the proviso of the act of 1832 (4 La. p. 549. 6 La. p. 12); nor to determine the character of the lands, in opposition to the expressed declarations of the government. 2d Land Laws, p. 928. no. 914.

The Register decided that this land fell within the proviso of the act of 1832, and was not subject to the operation of that act. The question now arises, what was the tribunal competent to decide this issue? Undoubtedly the Register and Receiver of the Land Office; and the only evidence upon which they could act was the official returns made to their office by the Surveyor General. Upon appeal, the General Land Office, upon satisfactory evidence of fraud or error in

MORANCY<br>v.<br>FORD.

the survey being shown, would have ordered a resurvey of the land, and that the plats should be made to conform to the resurvey. The decision of the Commissioner of the General Land Office would have been subject to the revision of the Secretary of the Treasury, whose decision would have been final.

*Thomas, Dunlap* and *Shannon*, for the defendant.

The judgment of the court was pronounced by

KING, J. The plaintiff alleges in his petition that he is the owner and pos-sessor of the lots of land numbered 1, 2, 3, 4, 5 and 6, of section 26, in township 17, range 13 east, in virtue of purchases from the United States, and avers that his title has been slandered by the defendant, who asserts title in himself. He prays to be quieted in his title, and for damages.

The defendant denies the plaintiff's ownership, and avers that, in his own right and as the representative of the widow and heirs of William Clair de-ceased, he has a good title to the lands claimed by the plaintiff, in virtue of an act of Congress passed on the 15th of June, 1832, entitled "An act to authorise the inhabitants of the State of Louisiana to enter the back lands;" and of an act supplementary thereto, passed on the 24th of February, 1835. He alleges that prior to and at the time of the passage of those acts, he was the owner of the lot no. 7, and that the widow and heirs of Clair were the owners of the lots 4, 5 and 6, in township 17, range 13 east, fronting on the Mississippi river, in the rear of which lie the lands claimed by the plaintiff: that before the expiration of those acts, the defendant, in his own right and as the representative of the widow and heirs of Clair, gave the notice required by the act, of his intention to become the purchaser of the lands claimed by the plaintiff, tendered the price to the proper officers, and did every act necessary to secure and retain the right vested in him and those he represented by the acts of Congress, to become the pur-chaser by preference: that the entries of the lands claimed by the plaintiff were illegal and void, and conveyed to him no title whatever.

It is shown that the defendant and the heirs of Clair are the owners of the lots of land fronting on the Mississippi river described in their answer, in the rear of and adjacent to which lie a part of the lands in controversy. In March, 1834, the defendant applied at the Land Office in Ouachita, to enter the back concessions of these several lots for himself and the heirs of Clair, under the provisions of the acts of 1832, and was answered by the officers that they were unprovided with a legal plat of the township, and the entry was not permitted. On the 2nd of June, 1835, he made a formal application, through an agent, to enter these back pre-emptions, and tendered the price to the proper officer, and was again refused. The reason assigned for the last refusal was, that the right of pre-emption claimed, extended so far back as to cover good lands bor-dering on another water-course, and consequently fell within the proviso of the act of Congress, which prohibited the entry of lands thus situated, as back con-cessions. Evidence was received by the Register, which convinced him that the map was inaccurate, but he considered that he was not authorised to disregard the official survey. From this decision, an appeal was taken to the Commis-sioner of the General Land Office, before whom it is still pending.

In December, 1832, and February, 1833, the plaintiff, Morancy, entered the lots of land described in his petition, and obtained the Receiver's receipt for the price, and the Register's certificate of purchase. These entries were permitted under the belief that the township in which they lie had been previously offered for public sale, a fact which the testimony leaves in doubt, and that they fell

MORANCY
*v.*
FORD.

within the proviso of the act of 1832, already referred to.   No patents have thus far, issued for these purchases in favor of the plaintiff, and further action in relation to them has probably been suspended, in consequence of the defendant's appeal.   These constitute the respective claims and titles of the parties to the lands in controversy.

It is conceded that the government never so entirely divests itself of title to public land, as to be precluded from cancelling the sale and setting aside the entry made in contravention of its laws, until a patent issues.   It is clear then, that the title which the plaintiff asks us to decree to be valid is incomplete and inchoate only, subject to be revised by the government, and to be annulled, if found to have been issued in contravention of any of its laws.   The title of the defendant, as presented in this controvery, is equally imperfect.   The government, it is true, through its officers, has given to the act of the 15th June, 1832, an interpretation different from that which it received in the case of *Thompson* v. *Schlater*, 13 La. 115.   It has been determined that, "when land was offered at public sale, prior to the passage of the act, the individual claiming the back tract, in virtue of the provisions of the act, is to be permitted to file the notice of his claim, and complete his payment thereof at any time prior to the 15th of June, 1835, and that no sales of any such tract, could legally be made after the date of the act, to any other person than the owner of the front tract."   In the case of *Jourdon* and *Landry* v. *Barrett*, the Supreme Court of the United States recognised these instructions as furnishing the true construction of the act. 2 Land Laws & Opinions &c., p. 573.  4 Howard's Reports, p. 183.   This court will at all times be disposed to yield its own interpretation, and acquiesce in that given by the government of the United States, to the laws of Congress.— Under the construction given by the Commissioner of the Land Office to the act of 1832, the entry made by the plaintiff was illegal and void, if the land was, at the date of his purchases, subject to be entered as a back concession. That however is one of the principal points of controversy between the parties. It has been submitted to the Register and Receiver of the Land Office, who were the appropriate tribunal for determining the fact, whether the land claimed by the defendant fell within the prohibition of the proviso contained in the act of the 15th June, 1832, and were for that reason not subject to be entered as a back concession.   The opinion of those officers was adverse to the defendant's claim, and in deciding the question they determined in relation to a matter within their jurisdiction.   Their decision is subject to be revised by the Commissioner of the General Land Office, and not by the tribunals of the State; and to that officer an appeal has been taken.   Until he determines between the parties and the patent issues from the government, neither will possess such a title as this court can deem to be valid.  4 Howard's Rep. 185.  13 Peter's Rep. 515, 416.

The parties are litigating before us in relation to titles which have not yet emanated from the government, and which may ultimately be refused to both.

It is therefore ordered that the judgment of the District Court be reversed. It is further ordered that there be judgment against the plaintiff as in case of non suit, and that he pay the costs of both courts.